**Donald R. JERMOSEN, Plaintiff–Appellee–Cross–Appellant,**

**v.**

**Harold J. SMITH, Superintendent of A.C.F.; Thomas A. Coughlin, III, Commissioner of C.F. of N.Y.; Charles James, D.S.S. of Attica Correctional Facility; D. DiBello, Correction Officer of Attica C.F.; G.D. Schrier, Correction Officer of A.C.F.; P. Stringhan, Sgt. of Attica Correctional Facility; Aelred Lippold, Lt. Adjustment Committee Chairman of A.C.F.; J. Bank, Correction Officer of A.C.F.; P.L. Pawlowski, Correction Officer, Defendants,**

**Aelred Lippold, Lt. Adjustment Committee Chairman of A.C.F., Defendant–Appellant–Cross–Appellee,**

**Harold J. Smith, Superintendent of A.C.F., Thomas A. Coughlin, III, Commissioner of A.C.F. of New York, Charles James, D.S.S. of Attica Correctional Facility, Defendants–Cross–Appellees.**

No. 1631, Dockets 91–2064, 91–2072.

United States Court of Appeals, Second Circuit.

Argued June 6, 1991.

Decided Oct. 1, 1991.

**548**

Frank K. Walsh, Asst. Atty. Gen. of the State of N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., Peter G. Crary, Asst. Atty. Gen., Albany, N.Y., of counsel), for defendant-appellant-cross-appellee.

Eric M. Shelton, Buffalo, N.Y., for plaintiff-appellee-cross-appellant.

Before OAKES, Chief Judge, and PRATT and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant - appellant - cross - appellee Aelred Lippold appeals and plaintiff-appellee-cross-appellant Donald R. Jermosen cross-appeals from a judgment entered in the United States District Court for the Western District of New York (John T. Elfvin, *Judge*), granting Jermosen's motion for judgment *non obstante veredicto* ("j.n.o.v.") in part, and denying it in part, following a jury trial. In 1982, Jermosen, an inmate at the Attica Correctional Facility ("Attica"), was subjected to one week of keeplock, *i.e.*, confinement to his cell, following a disciplinary hearing at which the presiding body, the Attica Adjustment Committee, concluded that Jermosen had engaged in misconduct. Subsequently, Jermosen initiated an action pursuant to 42 U.S.C. § 1983 against nine prison officials, including Lippold and defendants-cross-appellees Harold J. Smith, Thomas A. Coughlin, III and Charles James, who Jermosen claimed had subjected him to seven days of keeplock without affording him the procedural protections guaranteed by the due process clause.

The district court rejected the defendants' claims of qualified immunity and subsequently submitted to a jury the issue of defendants' liability for the alleged deprivation of Jermosen's rights. The jury found that Smith, Coughlin and James were not liable, but concluded that Lippold had violated Jermosen's rights. However, upon determining that Jermosen had not suffered any injury, the jury declined to award Jermosen any damages. Jermosen then made a motion for j.n.o.v. which the district court denied in part and granted in part. The court upheld the jury's verdict with regard to liability, but concluded that Jermosen was entitled to nominal damages. The court subsequently awarded Jermosen attorney's fees.

On appeal, Lippold contends that the district court erred by concluding that he and the other defendants were not entitled to assert qualified immunity from suit. Lippold argues that at the time of Jermosen's hearing it was not clearly established that prison officials were required to afford an inmate various procedural safeguards before subjecting that inmate to the penalty of one week of keeplock.

For the reasons set forth below, we reverse the judgment of the district court.

## BACKGROUND

On February 19, 1982, plaintiff-appellee Donald R. Jermosen, who was then an in-

mate at Attica, was involved in an "incident" in the prison mess hall and, as a result, was cited for a violation of the prison rules. More specifically, during breakfast, Jermosen disobeyed a prison guard's order not to return to the "chowline" for a second cup of milk. Once the guard, Officer DiBello, precluded Jermosen from obtaining the second cup, Jermosen began creating a disturbance among the other inmates by uttering vulgarities to the guard. Immediately after the incident, Jermosen was returned to his cell where he was keeplocked.

Believing that Jermosen's conduct violated various prison rules, Officer DiBello filed with the Attica superintendent a misbehavior report detailing Jermosen's offenses. Subsequently, the deputy superintendent forwarded the report to the Attica Adjustment Committee for consideration of the misbehavior charges. At that time, when such charges were levied against an inmate, it was prison policy for the Adjustment Committee, over which defendant-appellant Aelred Lippold presided, to conduct hearings at which the inmate would appear and relate his version of the events at issue. Upon reviewing the charges and the evidence, the Adjustment Committee would then decide whether the conduct constituted a violation of the prison rules and, if so, would impose a sanction. In February 1982, when the incident in question occurred, the Adjustment Committee was permitted to sanction misbehavior by, *inter alia*, keeplocking an inmate for up to seven days.

Three days after the incident occurred, Jermosen was brought before the Adjustment Committee. According to the facts adduced at trial, Jermosen told the Committee his version of the events and then was asked to step outside. The Committee then deliberated and determined that Jermosen did actually engage in the misbehavior of which Officer DiBello complained. After reviewing Jermosen's institutional record, the Committee informed Jermosen that he was to be keeplocked for a total of seven days and that his privileges were to be denied for an additional seven days. The Committee failed to give Jermosen a written statement of the evidence upon which it relied in making its decision.

Subsequently, Jermosen, acting *pro se*, commenced the underlying action pursuant to 42 U.S.C. § 1983, alleging that nine prison officials, including Lippold, had violated his right to due process of law. Specifically, Jermosen claimed that the defendant officials had failed to provide him with written notice of the charges against him, as well as an opportunity to call witnesses at the Adjustment Committee hearing and a written report of the findings and evidence relied on by the Committee. Accordingly, he claimed that the defendants did not afford him the procedural protections to which he was entitled under *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and its progeny.

In response, the defendant prison officials asserted qualified immunity from suit and moved for summary judgment. The district court denied defendants' motion upon concluding that it was clearly established at the time the Adjustment Committee conducted its hearing that officials could not impose a seven-day keeplock penalty on an inmate without affording him the procedural protections enumerated in *Wolff*. Subsequently, the defendants renewed their summary judgment motion, which the district court once again rejected.

On December 5, 1988, the district court appointed counsel for Jermosen. Thereafter, Jermosen voluntarily discontinued his claims against two of the defendant officers, Schrier and Stringhan. Furthermore, because defendant Bank was never properly served, Jermosen did not proceed against him at trial.

A two-day jury trial before Judge Elfvin was held on March 7 and March 8, 1990. At the conclusion of the plaintiff's case, the court dismissed the complaint against defendant Officers DiBello and Pawlowski. Consequently, four defendants—Lippold, Coughlin, Smith and James—remained in the case. The jury's findings, in the form of detailed interrogatories, exonerated all of these defendants except Lippold. With respect to Lippold, the jury concluded that,

although he violated Jermosen's rights by failing to afford him the protections required by *Wolff,* *i.e.,* providing him with a written report of the Adjustment Committee's findings, Lippold's actions did not cause Jermosen any compensable injury. Accordingly, the jury declined to award damages.

Jermosen moved for j.n.o.v. against the three defendants who had been cleared of liability. Additionally, he sought an award of nominal damages against Lippold. The district court granted Jermosen's motion with respect to Lippold and awarded Jermosen nominal damages of $1. With regard to the other three defendants, the court noted that the jury had specifically concluded that James and Smith were not personally involved in keeplocking Jermosen and that Coughlin was not involved in promulgating the rules that caused Jermosen's "injury." Determining that the jury's findings were supported by the evidence, the court denied Jermosen's motion with respect to Coughlin, Smith and James, and entered judgment in their favor. Additionally, the court granted Jermosen's motion for attorney's fees pursuant to 42 U.S.C. § 1988 (1988).

Both Lippold and Jermosen now appeal from this judgment.

## DISCUSSION

### I. *Qualified Immunity*

 The central issue on appeal is whether the district court erred in concluding that the defendants were not entitled to qualified immunity. "A government official performing a discretionary function is entitled to qualified immunity provided his or her 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Natale v. Town of Ridgefield,* 927 F.2d 101, 104 (2d Cir.1991) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Lippold contends that at the time of Jermosen's disciplinary hearing, it had not been clearly established that the procedural protections enunciated in *Wolff* applied to Adjustment Committee proceedings

in which keeplock could be imposed for a maximum of seven days. Accordingly, Lippold argues that he and the other officers involved did not violate Jermosen's "clearly established" rights and were thus entitled to assert the defense of qualified immunity. We agree.

In determining whether a particular right was clearly established at the time defendants acted, this Court has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *See Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) (citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Consequently, to ascertain what was clearly established when the Adjustment Committee disciplined Jermosen, we must consider what the state of the law was at that time.

In 1974, the Supreme Court held in *Wolff* that before an inmate could be placed in solitary confinement or deprived of good time, due process required that the inmate be afforded, *inter alia,* a " 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff,* 418 U.S. at 564, 94 S.Ct. at 2978–79 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)). The Court specifically noted, however, that if the prison administration intended to impose lesser penalties than solitary confinement or loss of good time, it might not be necessary to afford the inmate the procedural protections that it specified in *Wolff. See* 418 U.S. at 560–63, 94 S.Ct. at 2976–78. Accordingly, lower courts and prison administrators were left with the task of determining in what circumstances the procedural protections enunciated in *Wolff* were required.

Four years after *Wolff* was decided, this Court grappled with the question of "where keeplock falls on the spectrum be-

tween loss of privileges at one extreme and forfeiture of good time or placement in solitary confinement at the other." *McKinnon v. Patterson,* 568 F.2d 930, 936 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). We emphasized that the duration for which keeplock could be imposed was a factor to be considered in determining whether a prison Adjustment Committee was required to afford an inmate the procedural protections required in *Wolff.* However, we declined to state whether *Wolff* would apply in circumstances in which the maximum possible sanction was less than fourteen days. While we concluded that extended keeplock "is not significantly different from the other forms of punishment which we have held to constitute substantial deprivations," we found that it was "not necessary for us to decide whether terms of less than two weeks in keeplock would constitute a substantial deprivation under the Fourteenth Amendment," since at that time in New York an Adjustment Committee was authorized to impose keeplock for up to two weeks. *Id.* at 938.

Shortly after we rendered our decision in *McKinnon,* New York State enacted regulations that limited an Adjustment Committee's power to impose disciplinary measures. Specifically, the new regulations curtailed Adjustment Committee authority by allowing it to impose only up to seven days of keeplock rather than up to two weeks as it was formerly able to do. *See* 7 N.Y.C.R.R. § 304(1)(d) (1980).

At the time Jermosen's hearing was held, this Court had not yet indicated whether the protections outlined in *Wolff* would be required under the new regulations. Consequently, prison officials were forced to determine whether, under our previous decision in *McKinnon,* they were required to afford inmates the full panoply of due process protections detailed in *Wolff* before keeplocking the inmate for one week.

Jermosen points out that between the time N.Y.C.R.R. § 304(1)(d) was enacted and the Adjustment Committee hearing at issue was held, at least one district court concluded that "the possibility that the Ad-

justment Committee can impose one week of keeplock or detain an inmate in the Special Housing Unit ... warrants the application of *Wolff.*" *Powell v. Ward,* 487 F.Supp. 917, 925–26 n. 8 (S.D.N.Y.1980), *modified,* 643 F.2d 924 (2d Cir.1981), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). Jermosen suggests that this decision clearly established his right to *Wolff*'s procedural protections. We note, however, that because this decision was rendered in the Southern District of New York, it could not, by itself, clearly establish a principle of law in the Western District of New York where Attica is situated. Moreover, we recognize that the quoted language appeared as dicta contained in a footnote to the opinion. Thus, it seems that the state of the law regarding procedural protections to be afforded inmates subject to keeplock for one week was unclear at the time Lippold and the other defendants acted.

A review of subsequent decisions rendered by this Court reveals that *Wolff*'s applicability to proceedings involving penalties of up to one week of keeplock was far from clearly established at the time Jermosen's hearing was held. In *McCann v. Coughlin,* 698 F.2d 112, 121 (2d Cir.1983), for example, the plaintiff was denied the protections of *Wolff* during a prison Adjustment Committee hearing in which the maximum sanction was seven days of keeplock. On review, we held that *Wolff* applied because there was evidence that "the Committee on occasion extended this confinement for successive seven day periods." *Id.* However, we declined the opportunity to expand our prior holdings and enunciate a rule that would definitively require use of *Wolff*'s procedural protections in cases like Jermosen's. Similarly, in *Sher v. Coughlin,* 739 F.2d 77, 81 & n. 2 (2d Cir.1984), this Court once again noted that the procedures outlined in *Wolff* are required "[a]t least ... when the possible sanctions are of a gravity that includes restrictive confinement for *up to fourteen days.*" *Id.* (emphasis added). Although we left open the possibility that the *Wolff* requirements might be triggered in situations in which keeplock for up to one week could be im-

posed, we did not suggest that we had ever decided this issue in our previous cases. Thus, while a strong argument can be made that an extension of *Wolff* may be appropriate, it cannot be held that such an extension was clearly established or could reasonably have been anticipated on February 22, 1982, the date of Jermosen's hearing.

Accordingly, we conclude that none of the defendants violated established rights of which a reasonable officer would have known. They are thus entitled to assert qualified immunity from suit. As a result, the district court erred by allowing the matter to proceed to trial. The complaint against each of the defendants should be dismissed.

## II. *Attorney's Fees*

■ Upon concluding that Jermosen had "received at least some relief on the merits of his claim," the district court awarded Jermosen reasonable attorney's fees pursuant to 42 U.S.C. § 1988. Section 1988 provides that in civil rights actions, "the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1988). Ordinarily, a plaintiff is considered to have prevailed if he or she "succeed[s] on any significant issue in litigation which achieves some of the benefits ... sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citation omitted); *see Ruggiero v. Krzeminski*, 928 F.2d 558, 564 (2d Cir.1991). Since we have determined that the complaint against the defendants should have been dismissed, Jermosen can no longer satisfy the standard set forth in section 1988. Therefore, Jermosen is not entitled to an attorney's fee award.

## CONCLUSION

Based on the foregoing, we reverse the judgment of the district court and vacate the award of nominal damages and attorney's fees.

OAKES, Chief Judge, dissenting:

In connection with a February 1982 Attica Adjustment Committee Hearing, Donald R. Jermosen was denied his procedural rights under *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963 (1974). At that time, this court had already held that keeplocks of the nature ordered in Jermosen's case provide the predicate for recognition of due process rights under *Wolff*. *See Powell v. Ward*, 643 F.2d 924, 927–28, 932 (2d Cir.) (*per curiam*), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). Thus, Donald Jermosen's *Wolff* procedural rights were sufficiently well-established as of his Adjustment Committee hearing to overcome the defendants' claim of qualified immunity.

On February 19, 1982, Donald Jermosen became involved in an "incident" in the Attica Prison mess hall. According to Jermosen, a guard approached him for putting milk in his coffee (a customary practice among the inmates) in violation of prison rules. The guard, in contrast, claimed that Jermosen disobeyed an order not to return for a second cup of milk. Whether either Jermosen or the guard properly characterized the situation is irrelevant; the question at hand is whether the Adjustment Committee accorded Jermosen his well-established due process rights under the Fourteenth Amendment.

*Wolff v. McDonnell* established the principle that, in an intraprison disciplinary action in which a substantial deprivation of rights may be imposed, the Due Process Clause of the Fourteenth Amendment requires, *inter alia*, written notice of the charges twenty-four hours prior to the hearing and "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." 418 U.S. at 564, 94 S.Ct. at 2978–2979 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604 (1972)). The precise issue before this court is whether the right to *Wolff* procedures, in proceedings in which a maximum of one week of keeplock could be imposed, was sufficiently well-established on the date of Donald Jermosen's hearing

to overcome the qualified immunity accorded prison officials.

In *McKinnon v. Patterson*, 568 F.2d 930 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), Judge Timbers spoke to this issue, holding, in no uncertain terms, that *Wolff* rights applied to the fourteen-day keeplocks that an Adjustment Committee could impose under New York correctional regulations in force at the time:

> We conclude that keeplock is not significantly different from the other forms of punishment which we have held to constitute substantial deprivations. Accordingly we hold that the imposition of keeplock by the Adjustment Committee must be pursuant to a hearing with minimal due process safeguards.

568 F.2d at 938. Subsequently, in 1980, the state promulgated new regulations limiting to seven days the maximum keeplock term that might be imposed by an Adjustment Committee. *See* 7 N.Y.C.R.R. § 252.5(e)(2) (1980).

Although in *McKinnon* we ruled only on the fourteen-day maximum keeplock term, I believe our reasoning foreshadowed a ruling on terms of less than two weeks. Yet I need not navigate solely on the basis of the reasoning in *McKinnon*. In *Powell v. Ward*, 487 F.Supp. 917 (S.D.N.Y.1980), *aff'd as modified*, 643 F.2d 924 (2d Cir.), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981), a class action involving the applicability of *Wolff* procedural protections at Bedford Hills Correctional Facili-

ty,[1] Judge Stewart held that "keeplock is clearly included in the language and spirit of [this] order." *Powell*, 487 F.Supp. at 925. He went on, in a footnote, to elaborate on what was meant by the inclusion of keeplock in the order: "In our view, the possibility that the Adjustment Committee can impose one week of keeplock or detain an inmate in the Special Housing Unit pending a determination of the Superintendent's Proceeding warrants the application of *Wolff v. McDonnell*, to Adjustment Committee Proceedings."[2]

That case was appealed to our court and we affirmed, modifying the district court's order only insofar as it related to the dates after which records of disciplinary proceedings were to be expunged. *Powell*, 643 F.2d at 927, 934. We termed the argument that the original order did not include Adjustment Committee Proceedings as one "border[ing] on the frivolous," *id.* at 932, and made it very clear that we recognized that the district court's holding was directed to "*any* of the various 'special' confinements." *Id.* at 927 (emphasis added). The phrase "special confinements" was defined to encompass the imposition of keeplock by an Adjustment Committee, *id.* at 927–28 & 928 nn. 2 & 4, a punishment which the court labeled "as severe a form of discipline as the other special confinements and potentially even more severe." *Id.* at 928 n. 4. The court specifically noted that recent amendments to the New York regulations had reduced the maximum period of keeplock to seven days.[3]

---

1. The order granting class certification and imposing *Wolff* procedural requirements on the Adjustment Committee had been appealed only as to the time an inmate would be held in segregation pending investigation and the membership of the panels in Adjustment Committee and Superintendent's Proceedings. *See Powell v. Ward*, 542 F.2d 101 (2d Cir.1976).

2. *Id.* at 925 n. 8. Judge Stewart also found that the failure to complete hearings within seven days of the inmate's confinement violated that part of the previous order (as modified by the court of appeals) requiring a hearing to be held within seven days of confinement to Special Housing or segregation pending investigation. *Id.* at 931–32.

3. *Id.* at 928 n. 2. The court went on to say:

> If, as defendants would have us believe, Adjustment Committees do not have the power to order solitary confinement or the like (so that the 1975 Order perhaps *should* not have applied to Adjustment Committees), their appropriate remedies were to appeal this portion of the 1975 Order, which they did not do, or to seek modification of the Order in the district court, which they have not done. Perhaps the reason they did neither is that in fact Adjustment Committees in 1975 had the power to order a keeplock for up to two weeks, and currently has the power to order such confinement for up to seven days. The district court noted that a keeplock is sometimes even more restrictive than confinement in a Special Housing Unit, and this Court [in *McKinnon*] had held that such keeplocks provide the necessary predicate for recognition of

But the analysis cannot, of course, end here. Even if the Constitution required *Wolff* procedures, the issue of qualified immunity requires an additional inquiry as to whether *Powell* and *McKinnon* established sufficiently the contours of a prisoner's constitutional right to these procedures such that a reasonable prison official would have understood that denying Jermosen these procedures violated his Due Process rights. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987). The panel majority denies that the applicability of *Wolff* was apparent, arguing instead that the weight of *Powell* can be avoided because it was a case from the Southern District without circuit-wide import. I am not at all persuaded by this argument. In our affirmance of the *Powell* district court in 1981—almost one year prior to Jermosen's Adjustment Committee hearing—we made explicit reference to the applicability of *Wolff* to keeplock imposed by an Adjustment Committee under the new state limitations. *Powell*, 643 F.2d at 928 & n. 2. Thus, before Jermosen's case arose, there existed a clear constitutional right to *Wolff* procedures for the imposition of seven-days' keeplock.[4] To hold otherwise stretches the shield of qualified immunity to the proportions of absolute immunity.

Moreover, the crowning irony of this case is that the panel majority grants the

defendants immunity when—as defendants James and Lippold testified, Transcript at 244, 309, 331–32—the new regulations limiting keeplock to a seven-day maximum, 7 N.Y.C.R.R. § 252.5(e)(2), had not been implemented at Attica by February 1982, almost two years after their promulgation. The defendants operated under the mistaken impression that Attica Adjustment Committees could impose as much as fourteen days of keeplock. Yet in *McKinnon* we held, almost six years prior to Jermosen's Adjustment Committee hearing, that when a prisoner faced the *threat* of fourteen days of keeplock, the prisoner must be accorded *Wolff* rights. 568 F.2d at 938–39. Thus, the correction officers failed to act in accordance with what they thought the keeplock regulations to be, and are permitted by the panel majority to hide behind what the regulations were in fact. Today's decision sends the unfortunate message that ignorance of the Constitution will be rewarded.

Accordingly, I dissent.

---

due process rights under *McDonnell*. In any event, the application of the 1975 Order to Adjustment Committee Proceedings is clear and unqualified.
*Id.* at 932 (footnotes and citations omitted).

**4.** The panel majority cites *McCann v. Coughlin*, 698 F.2d 112 (2d Cir.1983), for the proposition that "*Wolff*'s applicability to proceedings involving penalties of up to one week of keeplock was far from clearly established at the time Jermosen's hearing was held." Opinion at 551. I believe this to be a misinterpretation of *McCann*.

*McCann* concerned an incident that took place in 1979, prior to our decision in *Powell*, when the state fourteen-day limit on keeplock still applied. Although the Fishkill Correctional Center Adjustment Committee made a practice of limiting the imposition of keeplock in a Special Housing Unit to seven days, the Committee would impose successive seven-day sentences. *McCann*, 698 F.2d at 121. Accordingly, we held that such a practice "place[d] the Committee's

action squarely within our decision in *McKinnon*." *Id.* On this basis, we affirmed the district court's denial of qualified immunity to prison officials. *Id.* at 125. Although the panel majority reads significance into *McCann*'s absence of references to *Powell* (and the applicability of *Wolff* to the new seven-day keeplock maximum), such references would have been inappropriate, given the date of the *McCann* incident.

The panel majority's reasoning also rests on a footnote in *Sher v. Coughlin*, 739 F.2d 77, 81 n. 2 (2d Cir.1984), stating that *Wolff* procedures apply "when the possible sanctions are of a gravity that includes restrictive confinement for up to fourteen days. *See McCann v. Coughlin, supra*, 698 F.2d at 121." *Id.* As the citation within the quote indicates, in the *Sher* footnote we were merely reporting the holding in *McCann*. Furthermore, because the incident that provided the basis of the *Sher* suit occurred early in 1980, our holding in *Powell* would not have been relevant to the decision.