Lynette BURNS, Plaintiff,

v.

Efrem CITARELLA, individually, Dennis Shaw, individually, Mary Beth Murphy, individually, Joseph J. Iaropoli, individually, Richard Nicholson, individually, and The Town of Somers, New York, Defendants.

No. 05 CIV. 10521(CM).

United States District Court,
S.D. New York.

July 18, 2006.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Plaintiff.

Paul Edward Svensson, Boeggeman, George, Hodges & Corde, P.C., White Plains, NY, for Defendants.

## DECISION AND ORDER DENYING INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE GROUND OF QUALIFIED IMMUNITY

MCMAHON, District Judge.

Plaintiff Lynette Burns, an elected Councilwoman for the Town of Somers, New York ("the Town"), brings this § 1983 action against Efrem Citarella, the Town Building Inspector; Dennis Shaw, a member of the Town Planning Board; Mary Beth Murphy, the Town Supervisor; and Joseph Iaropoli and Richard Nicholson, Councilmen for the Town (collectively "the individual defendants"); as well as the Town of Somers. Plaintiff alleges that defendants violated her Fourteenth Amendment right to equal protection by subjecting her to selective enforcement of the Town's building code because of her public criticism of Citarella.

The individual defendants move for summary judgment on the ground of qualified immunity.

For the reasons discussed below, the individual defendants' motion is denied. However, because plaintiff has not alleged any wrongdoing against Defendants Murphy, Iaropoli or Nicholson, the Court dismisses plaintiff's claims against them *sua sponte.*

### Facts

The relevant facts, as set forth in the Complaint and plaintiff's deposition, are as follows:

On February 13, 2004, Defendant Citarella, the Town Building Inspector, issued to plaintiff and her husband a building permit and certificate of occupancy for construction on their home, which is located at 4 Whittman Drive, Somers, New York. Complaint ("Cplt.") ¶ 16; Def. Ex. E, F, and R. The work had been completed several years earlier.

On April 20, 2004, in her capacity as a Councilwoman for the Town, plaintiff wrote a letter on Town Board letterhead to, *inter alia,* Citarella and the Town Board, expressing her concerns about a building permit that was issued to a premises known as I Mahopac Avenue. The letter provided, in relevant part:

A building permit has been issued to the above site in violation of Article XVI, Nonconforming Building and Uses, Article 170–95 Discontinuation, Article 170–96 Abandonment, 170–97 Change to another nonconforming use, Article 170–94 Enlargement or alteration.

In addition, it appears that the site is in violation of our wetland zoning codes and ordinances ...

This building and property [comprise] a non-conforming use in a residentially zoned area. The [previous] Post Office use was not *physically in operation* for over a year, abandoned in January 2003, today is April 2004. The building was to be a renovation, new storage area, with a 7 ft. ceiling. The new addition of storage space is an alteration. The building's [change in] use as a Post Of-

fice in a residential area to a non-conforming commercial use should be reviewed by the *Zoning Board of Appeals* and should not merely be required to have a building permit ...

Based on all of the above, I feel a Stop [Work] Order should be issued for this property until this matter is brought before the Zoning Board of Appeals for their review ...

Cplt. ¶ 9; Def. Ex. S.

On May 6, 2004, at a meeting of the Town Board in Executive Session, plaintiff expressed her opinion that Citarella had unlawfully issued a building permit for the 1 Mahopac Avenue premises and that, in so doing, he had impermissibly afforded the owner of that properly preferential treatment. Cplt. ¶ 10. That same month, plaintiff was quoted in *The North County News* as having stated with respect to the 1 Mahopac Avenue property, "There should not be a different standard in town based on ties to local government, business or private organizations. I believe all individuals are created equal, not some more equal than others." Cplt. ¶ 11; Pl.Ex. 2.

By letter dated June 30, 2004, the President of the Town of Somers unit of the Civil Service Employees Union ("CSEA") sought a formal request from the Regional CSEA to the Town Board and/or plaintiff for an apology to Citarella. Def. Ex. U. By letter dated July 12, 2004, Steven Landy, Citarella's attorney, asked plaintiff to "cease and desist from continuing to disparage Mr. Citarella's professional reputation." Def. Ex. V.

On or about August 5, 2004, "with the affirmative agreement, support, and encouragement of his co-defendants," Citarella commenced a state court action against plaintiff, seeking damages for defamation. Cplt. ¶ 12; Pl.Ex. 3. By letters dated August 12 and September 2, 2004, and allegedly as a result of Murphy's, Ia-

ropoli's and Nicholson's "refus[al] to provide [plaintiff] with defense counsel at Town expense," the Town's insurance carrier denied defense and indemnification of plaintiff with respect to Citarella's defamation claim against her. Cplt. ¶ 13; Def. Ex. X. Ultimately, on September 21, 2004, Selective Insurance agreed to provide defense with a reservation of rights. Def. Ex. Y.

In October 2004, Citarella—with the alleged "agreement" of the other individual defendants files a criminal information against plaintiff and issued an appearance ticket to plaintiff and her husband charging them with, *inter alia,* occupying and making alterations in the Fall of 1998 to their residential premises without a certificate of occupancy or a permit. Cplt. ¶ 15; Def. Ex. I. The information and appearance ticket were based in part on a Supporting Deposition sworn to by defendant Dennis Shaw on August 31, 2004, in which Shaw stated, "In the Fall of 1998 I saw boldhead doors and steps leading out of the finished basement. After review of the Somers Building Dept. files the following required items are not in the file, (1) Environmental Determination (2) Building Permit for above work (3) C.O. for above work." Def. Ex. G.

Following the recusal of two judges in the Justice Court of the Town of Somers, the criminal matter was transferred to the Town Court of the Town of North Salem. Cplt. ¶ 15. Thereafter, the Town of Somers' attorney recused himself as prosecutor on the criminal charges. Cplt. ¶ 17; Pl. Ex. 6.

In September 2005, plaintiff and her husband moved to dismiss the criminal charges on the grounds of statute of limitations, violation of their right to a speedy trial, and legal insufficiency of the criminal charges. Cplt. ¶ 18. On October 8, 2005,

**468**

at the urging of Murphy, Iaropoli and Nicholson, the People of the State of New York withdrew the criminal charges pending against plaintiff and her husband. Cplt. ¶ 19; Pl.Ex. 7. Although the attorney who notified the court that the charges were being withdrawn had never officially been retained by resolution of the Town Board to serve as prosecutor, the North Salem Town Court rendered a decision that the charges had been withdrawn and that plaintiff's motion to dismiss was moot. Cplt. ¶ 20; Pl.Ex. 9.

On December 14, 2005, plaintiff filed the present action, alleging that defendants selectively prosecuted her because she spoke out against Citarella's alleged failure to enforce the code in a fair and objective manner.

The individual defendants moved to dismiss on the ground of qualified immunity. Defendants deposed plaintiff on February 28, 2005. In accordance with this Court's rules concerning qualified immunity motions, no other depositions have been conducted to date.

Plaintiff opposes the motion. She also contends that, in the absence of complete discovery, defendants' motion should either be stayed or construed as a Rule 12 motion to dismiss.

**Standard of Review**

A defendant is entitled to summary judgment on qualified immunity grounds when "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[,] could conclude that it was objectively unreasonable for the defendant[ ]" to believe that he was acting in a fashion that did not clearly violate an established federally protected right. *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987)). While a determination of whether defendants may claim

qualified immunity is a legal issue that the court may decide on a motion for summary judgment, this determination is still subject to the rules governing motions for summary judgment. *See Lloyde v. Lord*, 1997 WL 123996, at *3 (S.D.N.Y. Mar.19, 1997).

**Discussion**

*A. Qualified Immunity: Procedure*

Plaintiff claims that she is unable to fully and effectively oppose defendants' motion for summary judgment in the absence of discovery—in particular, the opportunity to depose the individual defendants. Accordingly, plaintiff asserts that the present motion should be either stayed until discovery is completed or treated as a Rule 12 motion to dismiss. The court rejects this contention.

 The Supreme Court has stated that, because qualified immunity is an immunity from suit rather than a mere defense to liability, "[A] ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In keeping with the Supreme Court's observation that, in deciding the issue of qualified immunity, the court must assume plaintiff's version of the facts to be true (rendering defendants' story irrelevant), *id.* at 200–201, 121 S.Ct. 2151, this Court's Individual Practice Rules require that any defendant claiming qualified immunity (1) file a pro forma motion for summary judgment on that sole ground with his answer; (2) depose the plaintiff and file papers in support of the motion within thirty days thereafter; and (3) obtain a decision on the motion before conducting any further discovery. *See* Ind. Practices of J. McMahon, Rule 3(C); *see also Lee v. McCue*, 410

F.Supp.2d 221, 225 (S.D.N.Y.2006) (McMahon, J.).

Granting plaintiff discovery about defendants' version of events before deciding the motion is not consistent with the goal of "resolving immunity questions at the earliest possible stage in litigation," by assuming plaintiff's version of the facts to be true. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curium)).

But, because the Court concludes that the individual defendants are not entitled to qualified immunity, as discussed below, plaintiff's argument is moot.

### B. *Qualified Immunity: Merits*

█ The doctrine of qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under the *Harlow* analysis, a government official sued in his individual capacity is entitled to qualified immunity if either (1) plaintiff fails to allege violation of a federal right; (2) the right alleged was not clearly established at the time of the alleged violation; or (3) the defendant's actions were objectively reasonable in light of the legal rules that were clearly established at the time it was taken. *Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211–12 (2d Cir. 2003); *X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999) (citations omitted). "These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second

and third." *X–Men Sec., Inc.,* 196 F.3d at 66.

#### 1. *Plaintiff Alleges Violation of a Federal Right*

The initial inquiry is whether the complaint sufficiently alleges the violation of a federal right. In other words, the Court must determine whether viewing the facts in the light most favorable to plaintiff the facts alleged demonstrate that defendants' conduct violated a Constitutional or statutory right. *See Catletti v. Rampe,* 334 F.3d 225, 228 (2d Cir.2003). This inquiry is a "purely legal question." *X–Men Sec., Inc.,* 196 F.3d at 66.

█ In the present case, there is no question indeed defendants do not dispute that plaintiff's allegations, taken as true, state a cognizable equal protection violation based on selective enforcement. To state a claim for selective enforcement, a plaintiff must allege that (1) compared with others similarly situated, she was selectively treated, and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *See LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir. 1980).

Ms. Burns alleges that, "Defendants' institution and prosecution of Plaintiff on [ ] criminal charges [for failure to obtain a building permit and certificate of occupancy] violated her right to Equal Protection and constituted an illegal selective prosecution [under] 42 U.S.C. § 1983." Cplt. ¶ 24. Specifically, she claims (1) that she was prosecuted for alleged violations of the Town building code while, in at least sixteen other cases, property owners in the Town of comers including defendants Iaropoli and Shaw—were not prosecuted for similar infractions, and (2) that she was

selectively prosecuted because she exercised her First Amendment rights, by criticizing Citarella's issuance of a building permit for the premises located at 1 Mahopac Avenue. Cplt. ¶ 21. Thus, plaintiff clearly alleges violation of a federal right.

## 2. *The Right is Clearly Established*

■ Having resolved the first *Harlow* inquiry in favor of plaintiff, the Court next must determine whether the federal right that defendants allegedly violated was clearly established at the time of the alleged violation. A right is clearly established when "the contours of the right [are] ... sufficiently clear that a reasonable official would understand that what he is doing violates that right ... [T]he unlawfulness must be apparent." *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997) (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In determining whether a particular right was clearly established at the time of defendant's action, the Second Circuit has considered (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable official would have understood that his or her acts were unlawful. *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991). "This too is a question of law." *X–Men Sec. Inc.,* 196 F.3d at 66.

The Court concludes- and again, defendants do not dispute that plaintiff's right not to be selectively prosecuted on the basis of her protected speech was clearly established at the time the criminal prosecution was commenced.

■ As an initial matter, the Court notes that plaintiff's criticism of Citarella's performance of his official duties constituted protected speech.[1] The First Amendment guarantees all persons the right to express their views. As the Second Circuit has declared, "One does not lose one's right to speak upon becoming a legislator." *Id.* at 69. Indeed, "The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Id.; see also Skehan v. Kelly,* 2005 WL 1023206, *9 (S.D.N.Y. Apr.15, 2005) ("A public servant has a clearly established right to speak out on issues of public concern.").

■ "It is [ ] clearly established that selective enforcement of a facially valid law based on an official's dislike of protected expression is unlawful." *Field Day, LLC v. County of Suffolk,* 2005 WL 2445794, *17 (E.D.N.Y. Sept.30, 2005) (citations omitted). The Second Circuit has long recognized that "... enforcement of an otherwise valid [code or] ordinance violates the Constitution ... if ... the decision of the particular [governing] body is arbitrary ... or if the ordinance is applied or enforced with a discriminatory intent or

---

1. The Supreme Court's recent decision in *Garcetti v. Ceballos* does not alter this conclusion. In *Garcetti* the Court held, "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from *employer discipline.*" —— U.S. ——, ——, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2006) (emphasis add-

ed). In this case, none of the individual defendants was Burns' employer, such that they would have been in a position to discipline her for expressions made pursuant to her official duties. Nor did the selective prosecution that plaintiff allegedly suffered constitute employment-related discipline, as it was not an adverse employment action, but rather an action against plaintiff in her capacity as a private citizen.

purpose." *Brady v. Town of Colchester*, 863 F.2d 205, 217 (2d Cir.1988) (citations omitted). "Although selective enforcement is a 'murky corner of equal protection law in which there are surprisingly few cases,'" a claim for selective enforcement exists whereas allegedly happened here municipal officials have selectively enforced the laws in an attempt to prevent the exercise of protected expression. *La-Trieste Rest. & Cabaret v. Village of Port Chester*, 40 F.3d 587 (2d Cir.1994) (citing *LeClair*, 627 F.2d at 608).

Accordingly, the right in question was both recognized and defined with specificity by the Second Circuit long before October 2004, when criminal proceedings were initiated and the building code was enforced against plaintiff. Defendants are not entitled to qualified immunity under the second *Harlow* inquiry.

### 3. *Defendants' Actions Were Not Objectively Reasonable*

██ Where, as here, the law is well-settled, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19, 102 S.Ct. 2727. Nevertheless, "Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged conduct." *Lennon*, 66 F.3d at 420 (citations omitted). The objective reasonableness test is satisfied if officials of reasonable competence could disagree on the legality of the defendants' actions. *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

With these principles in mind, I turn to each of the individual defendants.

### (a) Efrem Citarella

██ Defendant Citarella argues that, because plaintiff and her husband admittedly made renovations to and occupied their residence without obtaining the requisite permit and certificate of occupancy, it was objectively reasonable for him to believe that he was not violating plaintiff's constitutional rights when he issued an appearance ticket and filed a criminal information against plaintiff. Plaintiff counters that no reasonable official could have believed that he was acting in a constitutionally permissible manner by prosecuting plaintiff for a 1998 violation of the building code in October 2004. The Court agrees.

Citarella did not enforce the building code or initiate criminal proceedings against plaintiff in the Fall of 1998, when plaintiff and her husband allegedly made alterations and renovations to their home without obtaining the requisite permits. Nor did he initiate criminal proceedings, or otherwise enforce the building code, in the Spring of 2003, when he acknowledged plaintiff's failure to obtain the required permits. Instead, Citarella advised plaintiff to apply for a building permit and certificate of occupancy for the work that had previously been completed. On February 13, 2004, he issued said permit and certificate of occupancy to plaintiff.

It was not until the Fall of 2004–*six years* after plaintiff's violation of the building code, and just months after plaintiff publicly criticized Citarella for allegedly exercising preferential treatment in the issuance of building permits that Citarella issued plaintiff an appearance ticket and filed a criminal information against her. By this time, the two year statute of limitations governing violations of the Town building code (a misdemeanor) had long

since run.[2] *See* McKinney's Crim. Proc. § 30.10(2)(c) (a prosecution for a misdemeanor must be commenced within two years of the commission thereof). Indeed, at the time Citarella commenced the criminal proceeding, plaintiff had already received the requisite building permits, at Citarella's behest!

Moreover, according to plaintiff, at the time Citarella filed the untimely criminal information against plaintiff, the Town maintained a well-established policy of not prosecuting code violators. Plaintiff identifies at least sixteen situations in which the Building Inspector did not enforce the building code against Town residents who committed violations similar to those committed by plaintiff.

Based on plaintiff's version of the facts, Citarella's conduct was nothing more than an act of revenge against plaintiff for her public criticism of him. On its face, such conduct is objectively *un*-reasonable. No reasonable jury could find otherwise. Accordingly, Citarella is not entitled to qualified immunity.

(b) Dennis Shaw

■ Plaintiff alleges that Defendant Shaw acted unreasonably in swearing out a Supporting Deposition on August 31, 2004, in which he stated, "In the Fall of 1998 I saw boldhead doors and steps leading out of the finished basement. After review of the Somers Building Dept. files the following required items are not in the file, (1) Environmental Determination (2) Building Permit for above work (3) C.O. for above work." Def. Ex. G. Viewing the facts in the light most favorable to plaintiff, the Court agrees that Shaw's conduct was not objectively reasonable, and thus that he is not entitled to qualified immunity.

In and of itself, swearing out a truthful deposition is not improper or unreasonable. But if the purpose of Shaw's deposition was to support or substantiate Citarella's untimely criminal information (which the Court already determined was unreasonable), then swearing out the Supporting Deposition was also unreasonable. Plaintiff's version of the facts suggests- and the court suspects that this is the case. Shaw's deposition, which refers to violations in the Fall of 1998, was not sworn out until August 31, 2004–six years after the alleged violations occurred, two years after the applicable statute of limitations had run, and less than two months before Citarella's initiation of criminal proceedings against plaintiff.

Moreover, plaintiff alleges that Shaw "executed a materially false supporting deposition." Cplt. ¶ 15. If plaintiff's allegations are true, then Shaw also acted unreasonably in swearing out a false Supporting Deposition. On its face, the deposition appears to contain a material misstatement. It says that, as of August 31, 2004, there was no building permit in plaintiff's file. Def. Ex. G. Plaintiff alleges that she obtained the building permit from Citarella on February 13, 2004–six months before. Shaw swore out his deposition.

Accordingly, Shaw is not entitled to qualified immunity.

If it turns out that plaintiff's allegations are not true either because Shaw's deposition was not false or because it was not sworn out for an improper purpose–then

---

**2.** Section 170–122(a) of the Somers Town Code makes violations of the building code punishable by a fine not to exceed $250 or imprisonment for a period not to exceed six months, or both. Under § 10.00(4) of New York's Penal Law, a misdemeanor is defined as an offense for which a sentence to a term of imprisonment in excess of fifteen days may be imposed, but for which a sentence to a term of imprisonment in excess of one year cannot be imposed.

Shaw will ultimately prevail, "not because of qualified immunity but because he did nothing wrong." *Dolson v. Village of Washingtonville*, 382 F.Supp.2d 598, 601 (S.D.N.Y.2005) (McMahon, J.); *Torres v. Village of Sleepy Hollow*, 379 F.Supp.2d 478, 483 (S.D.N.Y.2005) (McMahon, J.). As the Second Circuit has held, a defendant's assertion that plaintiff's constitutional rights were not violated, or that her version of events is wrong, goes to the merits of the case, not to the question of whether an official is entitled to qualified immunity. *See Stephenson v. Doe*, 332 F.3d 68, 78–79 (2d Cir.2003) (citing *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151).

(c) Mary Beth Murphy, Joseph Iaropoli and Richard Nicholson

Plaintiff alleges one and only one cause of action against defendants: selective prosecution. The complaint asserts, "As and for a Cause of Action ... Under the premises Defendants' institution and prosecution of Plaintiff on the above-referenced criminal charges violated her right to Equal Protection and constituted an illegal selective prosecution, 42 U.S.C. § 1983." Cplt. ¶ 24.

██ However, plaintiff fails to allege any involvement whatsoever by either Murphy, Iaropoli or Nicholson in the alleged selective prosecution. While plaintiff alleges that Murphy, Iaropoli and Nicholson lent their support and encouragement to Citarella's filing of a *defamation suit* against her, and refused to provide her with defense counsel at Town expense in connection with the *defamation suit*, these allegations are completely unrelated to the criminal charges that were filed against plaintiff. Cplt. ¶¶ 12, 13; Deposition of Lynette Burns ("Burns Dep.") at 97–99. Even her allegations that Murphy, Iaropoli and Nicholson arranged for an outside building inspector to review plaintiff's file, and that they persuaded the Town attorney to withdraw the criminal charges pending against plaintiff, are irrelevant, as these alleged actions occurred after the criminal charges had been filed against plaintiff, and ultimately led to the withdrawal of charges against plaintiff. Cplt. ¶ 19; Burns Dep. at 127, 133. Therefore, the motions by these defendants for dismissal on the ground of qualified immunity must be denied. Someone who does nothing to violate a person's constitutional rights is not entitled to qualified immunity he is entitled to dismissal.

In the absence of any allegations linking Murphy, Iaropoli or Nicholson to the institution of criminal proceedings against her, plaintiff fails to state a claim against them for selective prosecution. The Court questions why defendants have not moved to dismiss Murphy, Iaropoli and Nicholson under Rule 12(b)(6). Even in the absence of such a motion, however, the Court deems it proper to and does dismiss plaintiff's claims against defendants Murphy, Iaropoli and Nicholson, *sua sponte*, for failure to state a claim upon which relief can be granted.

**Conclusion**

For the foregoing reasons, the motion by Defendants Citarella, Shaw, Murphy, Iaropoli and Nicholson for summary judgment on the ground of qualified immunity is denied, and plaintiff's claims against Mary Beth Murphy, Joseph Iaropoli and Richard Nicholson are dismissed.

This constitutes the decision and order of the Court.